IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

DONALD JAMES WILSON                                                    PETITIONER

VS.                                           CIVIL ACTION NO 5:13cv248-DPJ-FKB

STATE OF MISSISSIPPI and
RONALD KING                                                          RESPONDENT

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

Donald James Wilson is a state prisoner serving a 40-year sentence for armed robbery.  He filed this action seeking federal habeas relief pursuant to 28 U.S.C. § 2254. Having considered the petition, response, and the state court record, the undersigned recommends that habeas relief be denied.

### II. FACTS AND PROCEDURAL HISTORY

On December 2, 2009, at approximately 2:30 in the afternoon, two men wearing camouflage clothing and ski masks entered the Bank of Franklin in Roxie, Mississippi, and announced that they were robbing the bank.  The only other persons in the bank at the time were two tellers, Debbie Smallwood and Pat Langston. The larger of the two men jumped over Ms. Langston's counter and knocked her to the floor, where he held her. The smaller man jumped over Ms. Smallwood's counter and ordered her to get down on the floor. After Ms. Smallwood got down on the floor, she saw the tip of a large knife protruding from the pocket of the cargo pants worn by the smaller robber. The smaller robber ordered Ms. Smallwood to give him the money from the cash drawers, and Ms.

Smallwood complied.  The larger man took cash from the bank's vault.  The robbers then directed the tellers to stay on the floor while they exited the bank.  The tellers estimated that the entire robbery lasted less than two minutes.  The total amount taken was a little over $92,000.

The robbery was investigated by the Franklin County Sheriff's Department. Deputy David Blackwell, the lead investigator, was the first responder to the scene.  After securing the area, Deputy Blackwell took statements from Ms. Smallwood and Ms. Langston and viewed the surveillance video of the robbery.  During his interview with Ms. Langston, Deputy Blackwell observed that she had beggar lice seeds on her blouse. According to Ms. Langston, these had not been there before the robbery.  Both tellers reported that they had seen enough skin on the robbers to identify them as African American.  They estimated the height of the smaller robber as 5'5" or 5'6" and the height of the other man as approximately 6'.

Investigators eventually developed Donald James Wilson as a suspect in the robbery.  A search of Wilson's vehicle revealed beggar lice seeds in the passenger areas and a brown plaid shirt that appeared to match one that could be seen hanging out from under the smaller robber's camouflage jacket in the surveillance video.   During questioning, Wilson denied any involvement and stated that he had been in the Ferriday, Louisiana, area visiting relatives at the time of the robbery.  Investigators were unable to corroborate Wilson's alibi.

Deona Fleming,  Wilson's girlfriend, was interviewed three times.  Initially, Fleming provided no useful information.  However, on the third interview, she relayed the details of

a conversation she had had with Wilson.  In that conversation, according to Fleming, Wilson admitted his involvement in the robbery and gave numerous specific details concerning it - details that, according to authorities, had not been released to the public. Additionally, Wilson showed Fleming a bag which he claimed held approximately $30,000. Wilson was arrested and charged with armed robbery.  His recorded height at the time of arrest was 5'5".

Wilson was indicted for armed robbery and tried in May of 2010.  The jury convicted him, and the court sentenced him to a term of 40 years.  The Mississippi Court of Appeals affirmed his conviction and sentence.  *Wilson v. State*, 102 So. 3d 1200 (Miss. Ct. App. 2012).  Wilson's petition for a writ of certiorari to the Mississippi Supreme Court was denied.

### III.  GROUNDS ASSERTED AND STANDARD OF REVIEW

Wilson seeks a writ of habeas corpus based upon the following grounds:[1]

1.    The evidence was insufficient to sustain the verdict, in that no testimony showed that property was taken by putting a person in fear of immediate injury by exhibition of a deadly weapon.

2.    The trial court erred in failing to declare a mistrial or to instruct the jury to disregard testimony after a witness stated that Wilson had described himself as a "three time loser."

3.    The following acts or omissions by Wilson's trial counsel constituted ineffective assistance:

   A.    Failing to rebut the state's race-neutral reasons for striking black jurors.

   B.    Failing to move for a directed verdict, to offer a peremptory

---

[1]Some of Wilson's grounds for relief have been restated for clarity.

instruction, or to move for judgment notwithstanding the verdict.

C.   Opening the door to, and failing to object to, testimony that Wilson possessed a concealed razor blade in his cap at the time of his arrest.

D.   Opening the door to, and failing to object to, testimony that Wilson was a "three time loser."

E.   Failing to request a deadly-weapon instruction.

## IV.  ANALYSIS

*Sufficiency of the evidence.*   In ground one of the petition, Wilson argues that the evidence was insufficient to convict him.  In analyzing a habeas claim based upon insufficiency of the evidence, the question is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The determination as to the essential elements of a crime is made by looking to state law.  Mississippi's armed robbery statute provides as follows:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery . . . .

Miss. Code Ann. § 97-3-79.  Wilson contends that there was no evidence to support the essential elements of the taking of property by the exhibition of a deadly weapon.

This claim was presented to the state court on direct appeal and was rejected as procedurally barred because Wilson's attorney had never raised the issue at trial.  Where a state prisoner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is precluded

4

unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Respondent argues that under *Coleman*, this court may not consider the merits of this claim.   However, the undersigned concludes that it is necessary to consider whether Wilson's default should be excused.  The cause prong of *Coleman*'s cause and prejudice exception can be satisfied by ineffective assistance of counsel in failing to raise the claim *if* the petitioner has exhausted the ineffective assistance allegation as an independent claim in state court.  *Murray v. Carrier*, 777 U.S. 478, 488-89 (1986).  In his direct appeal, Wilson alleged that his trial attorney had rendered ineffective assistance in failing to challenge the sufficiency of the evidence by seeking a directed verdict and peremptory instruction and failing to file a motion for a new trial.  The court of appeals, analyzing this claim under *Strickland v. Washington*, 466 U.S. 668 (1984), found that there was "some merit" to Wilson's claim of deficient performance.  It ultimately concluded, however, that the prejudice prong of *Strickland* was not met because Wilson's insufficiency argument was without merit.  Thus, because Wilson has satisfied the exhaustion requirement of *Murray v. Carrier* as to this allegation of ineffective assistance, he may establish cause for his default if he can satisfy this court that his attorney's failure to preserve his challenge to the sufficiency of the evidence constituted ineffective assistance.

The standard for determining ineffective assistance in the context of a cause and prejudice analysis is set forth in *Strickland*.  *Martinez v. Ryan*, 132 S.Ct. 1309, 1318

(2012). Under *Strickland's* two-prong analysis, a petitioner must first show that his attorney's performance was deficient. *Strickland*, 466 U.S. at 688. "Deficient" means that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 690. If a petitioner succeeds in establishing this first prong, he must go on to demonstrate that his attorney's deficient performance prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The standard of review of an attorney's performance is "highly deferential," and a court considering an ineffectiveness claim is to "indulge a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Id.* at 689.

Wilson claims in ground one that "no testimony existed to show that any taking of property was induced by putting a person in fear of immediate injury to that person by the exhibition of a deadly weapon." [1] at 6; [2] at 27. In considering whether Wilson's counsel was constitutionally ineffective on this issue, the Court will first review the relevant testimony at trial.

After being asked if the robber who jumped her counter had a weapon, Ms. Smallwood testified as follows:

A.   He did. He had a knife in his pocket.

Q.   When was it that you saw the knife?

A.   When I was on my knees getting the money out of the drawer, he told me to stay down.

Q.   Well, after he jumped the counter, Ms. Smallwood, how was it that you got on your knees?

A.   Well, just him telling me to get down on the floor. To get down and stay down, and that's when I seen the knife in his pocket.

Q.   And in what pocket of his pants was it in?

A.   On the right side.

. . .

A.   He has - you know - the camouflage has pockets running down the side and it was stuck up - it was in a sleeve. The knife wasn't. Like the point was sticking up.

Q.   Could you tell how big the knife was?

A.   It was just big.

Q.   How big was the blade?

A.   It was like - like a big butcher knife. You know, just something real long.

Q.   Okay. Did he ever pull it out of his pants pocket?

A.   No, ma'am.

Q.   So you said you emptied your drawers?

A.   I did.

Q.   Tell the jury about your - -

A.   My top drawer was open, and so he pulled the drawer out and they got all money out of there, and then we always keep our bottom drawers locked, and I had to unlock my bottom drawer. He cleaned it out, and then I had to go around to Pat's side and he got the money out of the top drawer, and then I had to unlock her drawer, and he cleaned it out.

Q.   Why was it that you unlocked the bottom drawers?

A.   It's just the policy of the bank to keep them locked.

Q.   But how was it that you came to unlock those bottom drawers?

A.   Well, just with our key. We have a key to unlock them.

7

Q.   Did you do it because he told you to?

A.   Oh, yes.

. . .

Q.   Okay. And when they came in and the smaller man jumped your counter, did you say anything to him, Ms. Smallwood?

A.   I did. I just said please don't hurt me. Please don't kill me, and that's when he said, "I don't want to hurt you girls." I think he said that like three times.

Q.   And were you afraid when they came in there?

A.   Oh, yes.

[7-3] at 89-90, 93.

As mentioned above, the smaller robber jumped Ms. Smallwood's counter, and the larger robber jumped Ms. Langston's counter. Ms. Langston testified at trial that the smaller robber "did not come at [her]" and therefore she did not see the weapon. She testified, however, that Ms. Smallwood told her about the weapon and described it as "a long blade knife" that was "sticking up out of the [smaller robber's] pocket." *Id.* at 123. On redirect examination, Ms. Langston also testified as follows:

Q.   Ms. Langston, you said you never saw a weapon, but what was Ms. Smallwood saying as she was taking the money out of the drawer?

A.   Please don't kill me. Please don't kill me. Don't hurt me. Please don't kill me. Over and over and over.

*Id.* at 124-25.

Deona Fleming, Wilson's girlfriend, also testified at trial. Fleming testified that Wilson admitted to her his involvement in the robbery and that he told her that he had a knife during the robbery. *Id.* at 140.

8

In an attempt to support his insufficiency of the evidence argument, Wilson cites *Dambrell v. State*, 903 So.2d 681 (Miss. 2005). In *Dambrell*, the robber went into a store bearing a mask on his face and a knife in his hand, but he hid the knife by wrapping his hand with a towel. When the store clerk called the police, the robber threw down the towel and knife and fled the store. At trial, the clerk testified that when he saw the robber's wrapped hand, he assumed he had a weapon. But he testified that he did not see the knife until the robber threw it down and fled. After the defendant was convicted of attempted armed robbery, the Mississippi Court of Appeals reversed the conviction based on *Gibby v. State*, 744 So.2d 244, 245 (Miss. 1999), in which the Mississippi Supreme Court held that a "[m]ere assumption that a deadly weapon exists is not enough" to support a conviction of armed robbery. *Dambrell*, 903 So.2d at 683. The Mississippi Supreme Court then granted a petition for writ of certiorari, overruled *Gibby v. State*, and reversed the Mississippi Court of Appeals. In so doing, the Mississippi Supreme Court issued the following holding in *Dambrell*:

> After careful consideration, this Court overrules *Gibby v. State*, 744 So.2d 244 (Miss. 1999). We find that when a defendant makes an overt act and a reasonable person would believe that a deadly weapon is present, there is no requirement that a victim must actually see the deadly weapon in order to convict pursuant to Miss. Code Ann. § 97-3-79. Therefore, a victim is not required to have 'definite knowledge' of a deadly weapon in the sense that the weapon must actually be seen by the victim's own eyes.

*Id.* at 689.

*Dambrell* does not support Wilson's sufficiency of the evidence argument. Whereas the issue in *Dambrell* was whether a defendant could be convicted of attempted armed robbery when the victim did not see the weapon, Ms. Smallwood testified that she saw a

9

large knife sticking out of Wilson's pocket. In *Dambrell*, the robber concealed the weapon, and the victim only assumed the robber had a weapon. But in Wilson's case, the victim testified that the knife was positioned in such a way that she could and did actually see it. Further, the Mississippi Supreme Court held in *Dambrell* that the evidence *was* sufficient to support a conviction of armed robbery under Miss. Code Ann. § 97-3-79 - despite the fact that the victim did not actually see the weapon. *Dambrell* clearly provides no support for Wilson's argument that the evidence was *not* sufficient to convict him of armed robbery, especially when the victim (Ms. Smallwood) specifically testified that she saw the weapon.

Wilson also argues that his case is "on . . . all fours" with *Clark v. State*, 756 So.2d 730 (Miss. 1999). In *Clark*, a store cashier noticed that the defendant acted suspiciously after entering the store and observed "what appeared to him to be the handle of a kitchen knife" in the defendant's pants pocket. *Clark*, 756 So.2d at 731. The defendant eventually came to the checkout counter to make a purchase, and when the cashier opened the cash register drawer to make change, the defendant reached into the drawer, grabbed cash, and fled. The Mississippi Supreme Court found that the evidence was insufficient to support a conviction of armed robbery because the exhibition of the weapon "was not the means by which" the property was taken. *Id.* at 732.

*Clark* also provides no support for Wilson's argument. The defendant in *Clark* never announced that he was robbing the store, threatened the clerk, or demanded anything from him, and the robber took the money himself without any assistance from the clerk. In contrast, the evidence in the instant case showed that Wilson announced upon entering

the bank that it was a robbery, jumped Ms. Smallwood's counter, repeatedly stated, "I don't want to hurt you girls," and demanded that Ms. Smallwood give him the money from the cash drawers. The evidence further showed that after seeing the knife protruding from Wilson's pants pocket and while pleading that Wilson not kill her, Ms. Smallwood unlocked the cash drawers as ordered by Wilson to allow him to take the money. Contrary to Wilson's argument, *Clark* is not "on . . . all fours" and does not support his insufficiency of the evidence claim.

Wilson cites other cases in an attempt to support his insufficiency of the evidence argument. None of them, however, support his argument that the evidence in this case was insufficient to convict him of armed robbery. Rather, the evidence in Wilson's case sufficiently created a jury question on whether he committed armed robbery under Miss. Code Ann. § 97-3-79. Having been presented the evidence and instructed on the elements under Miss. Code Ann. § 97-3-79, the jury found Wilson guilty of armed robbery.

The undersigned acknowledges that a non-frivolous argument can be made that the assistance of Wilson's attorney was deficient for failing to raise an insufficiency of the evidence claim on this issue at trial, since Wilson never removed the knife from his pocket or verbally referred specifically to the knife while threatening Ms. Smallwood. But if his attorney's performance was deficient on this issue, Wilson suffered no prejudice. The evidence supported a finding that during the commission of the robbery, Wilson was in possession of a large knife (which was described as being "like a big butcher knife"). The evidence further supported a finding that the knife was positioned in such a way that it could be seen, and Ms. Smallwood testified that after Wilson demanded that she get

11

down, she did, in fact, see the knife protruding from a pocket "down the side" of Wilson's pants. The evidence also showed that after Ms. Smallwood saw the knife and while pleading that Wilson not kill her, she unlocked the cash drawers as ordered by Wilson to allow him to rob the bank of the money in the drawers. The evidence was sufficient to find Wilson guilty of armed robbery under Miss. Code Ann. § 97-3-79.

The conclusion that the claim was without merit and that therefore Wilson did not suffer prejudice from his attorney's failure to assert it bears on several matters. First, it means that Wilson has shown neither cause for nor prejudice from, within the meaning of *Murray v. Carrier*, his attorney's default of his *Jackson v. Virginia* claim, and that therefore that claim remains procedurally barred. Furthermore, even if there were some basis for overstepping the procedural bar and considering the claim, the ultimate conclusion would be that the evidence was sufficient to sustain the conviction. Finally, the finding of a lack of prejudice disposes of Wilson's independent habeas claim of ineffective assistance based upon his attorney's failure to move for a directed verdict or judgment notwithstanding the verdict.

*"Three time loser" testimony.* Wilson's second ground for habeas relief is that the trial court erred in failing to declare a mistrial or to disregard the testimony after a witness stated that Wilson had described himself as a "three time loser." This ground, like ground one, was found by the state appellate court to be procedurally barred because it had not been raised at trial. Again, however, Wilson exhausted an ineffective assistance claim based upon his attorney's failure to raise this claim, and therefore the undersigned has considered whether this failure can serve as cause for the default. The undersigned

12

concludes that his attorney's failure to raise this issue did not constitute deficient performance.

The occasion of the "three time loser" remark was the testimony of Deona Fleming, Wilson's girlfriend, concerning a conversation she had with Wilson. In the conversation as relayed by Fleming, Wilson admitted his participation in the robbery.  During redirect, Fleming described a portion of the conversation in which Wilson referred to himself as a "three time loser," an apparent reference to his prior criminal convictions:

> Q:      . . . And you said – you were talking about a time when he was choking you, Ms. Fleming, when he was saying that his life was in your hands.  When was that?
>
> A.      I don't if it was – I know it was after the December 2, but he was like – he had three time loser.  He had already been questioned, and he was like I am a three time loser.  I go to the pen behind the bank robbery, they're going to throw me away, and they're going to throw away the keys.

[7-3] at 154.

Wilson argues that his attorney should not have opened the door to this testimony and should have objected.  It is unclear, however, how defense counsel "opened the door."  Furthermore, it is not a given that the jurors would have understood these remarks as a reference to prior criminal convictions, and defense counsel could reasonably have concluded that requesting that the statement be stricken and that the jury be directed to disregard it would have unnecessarily called it to the jury's attention. In short, Wilson cannot establish that his attorney rendered ineffective assistance in failing to object and request a limiting instruction.  Thus, he cannot overstep the procedural bar for consideration of ground two of the petition.  Furthermore, his related independent claim of ineffective assistance is without merit.

*Ineffective Assistance of Counsel: Instruction regarding deadly weapon.* Wilson

argues that his attorney should have sought a jury instruction requiring that the jurors find

that a knife constitutes a deadly weapon before finding him guilty. In his appellate brief in

state court, Wilson did not include this allegation in his statement of the issues nor in his

summary of the argument. The only mention of this claim was in a paragraph following

his allegations regarding his attorney's failure to challenge the sufficiency of the evidence,

and the appellate court never addressed it. In the opinion of the undersigned, the failure

to identify this as a separate issue in Wilson's appellate brief - a brief which clearly set out

in Wilson's assignments of error in both the initial statement of issues and in its headings -

resulted in a failure to give the state court a fair opportunity to address this claim.

Furthermore, there is no longer any avenue of relief available to Wilson in state court, as

his three-year period for seeking post-conviction relief has expired. Because this claim

would now be procedurally barred in state court, it has  been procedurally defaulted for

purposes of federal habeas review, and this court may not review its merits absent a

showing of either cause for and prejudice from the default, or that failure to consider his

claims would result in a fundamental miscarriage of justice. *See Sones v. Hargett*, 61

F.3d 410, 416 (5th Cir. 1995). Plaintiff has made no showing of either of these

exceptions.

In any event, this ground for relief is wholly without merit. Jury Instruction 7

directed the jury that in order to convict Wilson, the jury was required to find beyond a

reasonable doubt that "[s]uch knife was a deadly weapon." [7-2] at 74. Defense

counsel's failure to submit an essentially identical instruction could not constitute deficient

performance.

14

The remaining grounds for relief, all of which allege ineffective assistance of counsel, were rejected on the merits by the Mississippi Supreme Court in Wilson's direct appeal. They are therefore subject to the highly deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), which allows habeas relief in this case only if the state court's rejection of Wilson's claims involved "an unreasonable application of . . . clearly established Federal law . . . as determined by the Supreme Court of the United States" or "an unreasonable determination of the facts" in light of the evidence presented to the state court. *Id.* The Supreme Court has repeatedly emphasized that " 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, the application must be not only incorrect but also "objectively unreasonable." *Id.* at 409.

A petitioner's difficulty in establishing a claim of ineffective assistance of counsel is compounded when the claim is viewed through the lens of § 2254(d). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland'*s deferential standard." *Harrington v. Richter,* 562 U.S. 86, 105 (2011).

*Ineffective assistance regarding Batson claim.* Wilson, who is African American, argues that his trial attorney rendered ineffective assistance in his challenge of the state's use of peremptory strikes on four African American jurors. *Batson v. Kentucky*, 476 U.S.

15

79 (1986), prohibits purposeful racial discrimination in jury selection.  A criminal defendant asserting at trial that the prosecution has violated *Batson* must first make a prima facie showing by the "totality of the relevant facts" that the prosecution has exercised its strikes in a racially discriminatory manner.  *Batson*, 476 U.S. at 93-94, 96-97.  If a prima facie case is made, the burden of production then shifts to the state to articulate a race-neutral reason for striking the venire member.  *Id.* at 97.  A reason is deemed to be race-neutral unless a discriminatory intent is inherent in the prosecutor's explanation.  *Hernandez v. New York*, 500 U.S. 352, 360 (1991).  The defendant may offer rebuttal to the reason given by the state.  The trial judge then makes a determination as to whether the defendant has sustained his overall burden of proving purposeful discrimination.  *Batson*, 476 U.S. at 98.  A trial court's decision on the absence of purposeful discrimination is a "pure issue of fact."  *Hernandez*, 500 U.S. at 364.

During the first round of jury selection, the state exercised four of its peremptory challenges, three of which were directed at African Americans.  The twelve proposed jurors tendered to the defense consisted of one African American and eleven Caucasians.  At this point, the defense raised an objection to the three challenges against African Americans.  In response, the prosecutor justified the striking of Robert McCoy based upon the fact that McCoy lived in Roxie, was a neighbor of Wilson's half brother, and had been downtown following the robbery and had spoken to townspeople about it.  The prosecutor explained that he had stricken Marcus Cameron because Deputy Roy O'Neal, a potential witness in the case, had previously arrested Cameron at least twice, because Cameron had been staring at prosecutors during voir dire, and because Cameron had failed to respond to a question during voir dire as to whether any potential juror had previously

16

been arrested. The prosecutor justified the strike of Peggy Wyatt on the basis that she had failed to disclose that her son had previously been arrested and jailed by the Franklin County Sheriff's Department.  The court accepted these explanations as race-neutral. Defense counsel offered no rebuttal to the prosecutor's justifications, and thus the court found that Wilson had failed to show purposeful discrimination.

In the second round, the state struck two additional African American jurors, Craig Harris and Carolyn Hunt.  The prosecution justified the strike against Harris on the grounds that Harris had been observed shaking hands in the courtroom with members of Wilson's family and that he had failed to reveal during voir dire that he knew Wilson's family and that he been arrested by Deputy Otis Dire, a witness for the state.  Regarding Hunt, the prosecution pointed out that she was the sister-in-law of a former deputy sheriff who had been prosecuted for larceny and that there was a great deal of animosity between the former deputy's family and the sheriff's department.  Again, defense counsel offered no rebuttal, and the court let the strikes stand.

Wilson argues that his attorney rendered ineffective assistance in failing to offer any rebuttal.  However, Wilson has made no argument as to what such rebuttal would have consisted of.  Rather, Wilson's argument is nothing more than a generalized complaint that his attorney should have done more.  Furthermore, the record contains nothing to cast doubt on the facts concerning the prospective jurors as represented by the prosecutor.  Without identifying some basis for rebuttal, Wilson cannot establish that but for his counsel's lack of rebuttal, the trial court would have ruled in his favor on his *Batson* challenges.  In short, Wilson has not raised a sufficient issue of either deficient performance or prejudice on these *Strickland* claims to merit relief, in that there is a

reasonable argument that his attorney's performance was not deficient and that, in any event, he was not prejudiced by any such alleged deficiency.  The state court's rejection of these claims may not be disturbed by this court.

*Ineffective assistance in asking about weapon.*  Officer Greg Lee of the Adams County Sheriff's Department testified for the state concerning Wilson's arrest.  He testified that once an attempt to locate Wilson at his home was unsuccessful, several officers searched the area for him.  Officer Ricky Stevens spotted Wilson in a car and signaled for Wilson to stop by turning on his lights and siren.  However, Wilson continued driving for a couple of miles until another officer passed Wilson and blocked the road.  When Wilson failed to comply with an order to get out of his car, Officer Lee took him to the ground.  On cross examination, defense counsel attempted to show that Wilson had not acted unreasonably during the arrest and was not armed.  However, the testimony that was elicited revealed that Wilson had a razor blade hidden in his cap:

> Q:  Officer Lee, Mr. Wilson didn't strike you, did you? [sic].
>
> A:  Sir?
>
> Q:  You [sic] didn't strike you, did he?
>
> A.  No, sir.
>
> Q:  And Mr. Stevens was in an unmarked car, a pickup truck?
>
> A.  Yes, sir.
>
> Q:  Did he have his lights going?  Siren?
>
> A.  Yes, sir.  After I turned mine on, he turned his on.
>
> Q:  And did Mr. Wilson have a weapon on him?
>
> A.  He had a razor blade in his cap.

18

Q:     In his hat?

A.     Yes, sir.

Q:     He didn't draw that on you, did he?

A:     No, sir.

Q:     Didn't have a gun?

A.     No, sir.

[7-4] at 13.

Wilson claims that defense counsel was ineffective in asking the question about a weapon. In considering this claim, the state appellate court concluded that Wilson had failed to meet *Strickland*'s standard. This determination was reasonable. While the testimony was obviously not favorable to Wilson, it was not so prejudicial or inflammatory as to have been reasonably likely to have affected the outcome of the trial, given the other evidence linking Wilson to the crime. Accordingly, federal relief is precluded.

In summary, Wilson has not shown, as is required under AEDPA, that there is no reasonable argument that his attorney rendered effective performance.

## V. CONCLUSION

Grounds one and two of Wilson's petition are procedurally barred. Wilson has failed to establish that the state court's adjudication of the remainder of his claims was contrary to, or involved an unreasonable application of, clearly established Supreme Court law or was based upon an unreasonable determination of the facts. Accordingly, the undersigned recommends that habeas relief be denied and the petition be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 1st day of February, 2016.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE